STEPHEN S. WALTERS (BAR NO. 54746)
NICHOLAS A. SUBIAS (BAR NO. 228789)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516
E-Mail:  swalters@allenmatkins.com
            nsubias@allenmatkins.com

Attorneys for Plaintiff BrowserCam, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BrowserCam, Inc., a California corporation , <br><br> Plaintiff, <br><br> vs. <br><br> Gomez, Inc., a Delaware corporation, <br><br> Defendant. | Case No. C-08-02959-WHA <br><br> **PLAINTIFF BROWSERCAM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GOMEZ, INC.'S MOTION TO DISMISS OR TRANSFER** <br><br> Date:    September 25, 2008 <br> Time:    8:00 a.m. <br> Ctrm:   9, 19th Floor <br> Judge:   Hon. William H. Alsup |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND FACTS ........................................................................1

        A.    The Parties .................................................................................1

        B.    The Asset Purchase Agreement .................................................2

III.    PROCEDURAL HISTORY .....................................................................4

IV.     ARGUMENT...........................................................................................5

        A.    The Northern District of California Is A Proper Forum for This
              Action .......................................................................................5

              1.    The Distinction Between Permissive and Mandatory
                    Forum-Selection Clauses...................................................5

              2.    Section 7.3 of the Agreement Is Permissive, Not
                    Mandatory ........................................................................7

              3.    Defendant's Arguments for Dismissal Based on Section
                    7.3 Are Without Merit........................................................8

        B.    This Case Should Not Be Transferred to New York...................11

              1.    28 U.S.C. § 1406(a) Does Not Support Transfer .............11

              2.    28 U.S.C. § 1404(a) Does Not Support Transfer .............12

        C.    This Court Has Subject Matter Jurisdiction Over Both of
              BrowserCam's Claims for Relief ...............................................15

V.      CONCLUSION .....................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs v. Gardner,*
    387 U.S. 136 (1967) ........................................................................................ 16

*Argueta v. Banco Mexicano, S.A.,*
    87 F.3d 320, 324 (9th Cir. 1996) ............................................................. 5, 9

*California v. United States,*
    No. C-05-00328 JSW, 2008 U.S. Dist. LEXIS 21258 (N.D. Cal. Mar.
    18, 2008) ......................................................................................................... 16

*City of Arcadia v. EPA,*
    265 F.Supp.2d 1142 (N.D. Cal. 2003) .................................................... 15

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834, 843 (9th Cir. 1986) ..................................................... 13, 14

*Docksider, Ltd. v. Sea Technology, Ltd.,*
    875 F.2d 762, 764 (9th Cir. 1989) ........................................................... 5, 6

*Envts. Prot. Info. Ctr. v. Tuttle,*
    No. C-00-0713 SC, 2001 U.S. Dist. LEXIS 1154 (N.D. Cal. Jan. 22,
    2007) ................................................................................................................. 16

*Fireman's Fund Ins. Co. v. M.V. Dole Ecuador,*
    Case No. C-94-3691-CAL ARB, 1995 U.S. Dist. Lexis 7996, *2
    (N.D. Cal. June 2, 1995) ............................................................................ 11

*Hatch v. Reliance Ins. Co.,*
    758 F.2d 409, 414 (9th Cir. 1985) ........................................................... 12

*Hile v. Buth-Na-Bodhaige, Inc.,*
    Case No. C-07-00791 JSW, 2007 WL 4410774, *2 (N.D. Cal. Dec.
    14, 2007) ..................................................................................................... 5, 7, 8

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.,*
    817 F.2d 75, 77 (9th Cir. 1987) ....................................................... 5, 6, 8, 9

*Indemnity Ins. Co. of N. America v. Schneider Freight USA, Inc.,*
    Case No. CV-00-08032 DDP (AIJx), 2001 U.S. Dist. Lexis 18918,
    *4-*5 (C.D. Cal. June 18, 2001) ................................................................. 9

*Interline v. Zim Israel Nav. Co.,*
    No. C-00-0939 SC, 2000 U.S. Dist. Lexis 10867, *4 (N.D. Cal. July
    27, 2000) .......................................................................................................... 11

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,*
    Case No. C-073983 JSW, 2007 WL 4532214, *6 (N.D. Cal. Dec. 19,
    2007) .................................................................................................... 12, 13, 14

*Laurel Village Baker LLC v. Global Payment Direct, Inc.,*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

- ii -

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

Case No. C-06-01332 MJJ, 2006 U.S. Dist. Lexis 73663, *3-*4 (N.D.
Cal. Sept. 25, 2006) ................................................................................ 9, 11

*Lockman Foundation v. Evangelical Alliance Mission,*
930 F.2d 764, 771 (9th Cir. 1991) ........................................................ 14

*Lou v. Belzberg,*
834 F.2d 730, 739 (9th Cir. 1987) ........................................................ 13

*Manetti-Farrow, Inc. v. Gucci America, Inc.,*
858 F.2d 509, 512 (9th Cir. 1988) ..................................................... 5, 9

*No. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,*
69 F.3d 1034, 1037 (9th Cir. 1995) ................................................passim

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,*
741 F.2d 273 (9th Cir. 1984) ............................................................ 6, 8

*Principal Life Ins. Co. v. Robinson,* 394 F.3d 665 (9th Cir. 2005) ............................. 16, 18

*Ruhrgas AG v. Marathon Oil Co.,*
526 U.S. 574, 578 (1999) ...................................................................... 15

*Vogt-Nem, Inc. v. M/V Tramper,*
236 F. Supp. 2d 1226, 1231 (N.D. Cal. 2002) .................................... 8, 9

**Statutes and Administrative Rules**

15 U.S.C. §23 ........................................................................................................ 14

28 U.S.C. Section 1404(a) ........................................................... 11, 12, 13, 15

28 U.S.C. Section 1406(a) ................................................................... 11, 12

Fed. R. Civ. P. 45 .......................................................................................... 14

Fed. R. Civ. P. 45(a)(2)(A-C) ....................................................................... 14

Fed. R. Civ. P. 45(b)(2)(A-D) ...................................................................... 14

**Other**

9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.22[3][c] (3 ed.
2008) ....................................................................................................... 14

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

-iii-

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

# I. INTRODUCTION

The parties to this action agreed in their contract that they would consent to jurisdiction and venue for lawsuits brought in New York, but did not agree that actions between them "shall be" filed in New York or that New York was the "exclusive", "sole", or "only" forum for contract-based disputes. A wall of authority from the Ninth Circuit – which Defendant has entirely ignored – holds that such "permissive" clauses do not preclude a party from filing suit in another proper venue, such as this District. Defendant's motion to dismiss or to transfer the case to New York is very nearly frivolous, and must be denied.

Defendant's motion to dismiss for lack of ripeness is equally weak. Once again, Defendant ignores controlling Ninth Circuit law when attempting to apply ripeness standards for actions against administrative agencies to a lawsuit between private parties. And, also once again, Defendant mischaracterizes the nature of Plaintiff's claims, which are based on Defendant's past and current breaches of specific provisions of the parties' contract, not a failure to make a future payment. This motion must be denied, as well.

# II. BACKGROUND FACTS

## A.    The Parties.

Plaintiff BrowserCam, Inc. ("BrowserCam") is a California corporation with its principal place of business in San Francisco, California, and was a market leader in providing certain on-demand web-based services.[1/] (Complaint, ¶¶ 2,7.) BrowserCam's services allowed customers – including website designers, developers and quality assurance engineers – to view websites on different combinations of computer operating systems and web browsers. (*Id*. at ¶ 7.) This enabled subscribers to see how their web pages appeared when generated across more than 200 different configurations of web user environments. (*Id*. at ¶8.) BrowserCam's services helped subscribers to identify and isolate compatibility issues that might be experienced by consumers and others viewing a

---

[1/]    References to "web" or "web-based" in this Opposition refer to the World Wide Web.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1  website, thereby ensuring a consistent viewing experience for website visitors regardless of

2  the operating systems or browsers that are used.  (*Id*.)

3       In June 2007, BrowserCam sold substantially all of its assets, including its

4  BrowserCam services unit, to Defendant Gomez, Inc., a Delaware corporation with its

5  principal place of business in Lexington, Massachusetts.  (Complaint, ¶ 3.)  Defendant

6  provides web experience management services, which customers use to test their web

7  applications while in development and to monitor those applications after deployment for

8  viewing on the web.  (*Id*. at ¶ 10.)  Among Defendant's products and services is the

9  "ExperienceFirst Platform."  The ExperienceFirst Platform provides a comprehensive set

10  of integrated services that contain or were, in part, derived from BrowserCam products and

11  services which Defendant acquired through the June 2007 asset purchase.  (*Id*. at ¶ 11.)

12       Defendant offers its services, including the ExperienceFirst Platform, on an annual

13  subscription basis, principally through tiered usage plans.  (Complaint, ¶ 12.)  From 2005

14  to 2007, Defendant's annual revenue increased from $14.8 million to $32.6 million.

15  **B.     The Asset Purchase Agreement.**

16       BrowserCam's sale of its assets to Defendant was accomplished through an Asset

17  Purchase Agreement, entered June 19, 2007.  (Complaint, ¶ 13.)  The consideration for the

18  purchase was $1.5 million in cash, a $750,000 note, and an "Earn-Out Payment."  The

19  Agreement says this about the Earn-Out:

20             [O]n or before August 15, 2008 (subject to extension on
             account of the dispute resolution process referred to in Section
21             1.5(d), the Purchaser [Defendant] shall pay cash by wire
             transfer of immediately available funds (in accordance with
22             wire instructions received by Purchaser not less than five days
             prior to the date of payment) in an amount, if positive, equal to
23             (i)(A) the Applicable Bookings Amount minus (B) $600,000;
             multiplied by 1.25 (the **"Earn-Out Payment"**).
24
   Complaint, ¶14 (quoting Agreement ¶ 1.5(c)).
25
       Section 1.5(c) of the Agreement defined the "Applicable Bookings Amount" as,
26
             the amount of subscription revenue booked by Purchaser
27             [Defendant] (x) in accordance with Seller's [BrowserCam's]
             existing   automated   online   sign-up   procedure   and/or
28             Purchaser's accounting practices, in either case for payments

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

2

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1    due within 30 days under written, fully executed contracts with
2    *bona fide* customers who are not affiliates of Seller (or
      affiliates of any of Seller's directors, officers or stockholders)
3    having no right of cancellation or refund and having payment
      terms of not greater than 30 days, (y) for the period from and
      including July 1, 2007 to and including June 30, 2008 (the
4    **"Applicable Period"**) and (z) on account of sales by the
      Purchaser of products and services containing, or derived from
5    the Seller IP Rights (**"BrowserCam Products and Services"**).
      The Purchaser [Defendant] agrees to account separately for
6    such bookings.

7    Complaint, ¶ 15.

8    In addition to making the Earn-Out Payment, Section 1.5(c) of the Agreement

9    required Defendant,

10   (i) not to make any material reductions in the list price of the
      BrowserCam Products and Services without Seller's
11   [BrowserCam's] consent, and (ii) to expend not less than
      $250,000 in the aggregate on (i) marketing the BrowserCam
12   Products and Services and (ii) providing infrastructure
      (including human resources), marketing and sales support for
13   the BrowserCam Products and Services.

14   Complaint, ¶ 16.

15   Furthermore, under Section 1.5(c), Defendant agreed to provide BrowserCam with

16   a plan detailing how Defendant would market BrowserCam products and services, as well

17   as to give BrowserCam monthly performance summaries.  The Agreement states that

18   Defendant shall,

19   prepare and deliver to Seller [BrowserCam] within thirty (30)
      days after Closing a sales and marketing plan (including a pro-
20   forma budget relating to the same) for the Browsercam [sic]
      Products and Services during the Applicable Period (the "Sales
21   and Marketing Plan").  Additionally, Purchaser shall provide a
      monthly summary of the Seller's online Management and
22   reporting system single screen shot (which, for the avoidance
      of doubt, shall be a Purchased Asset) at reasonable intervals
23   during the Applicable Period.

24   Complaint, ¶ 17.

25   Section 1.5(c) also required Defendant to attempt to achieve the maximum

26   Applicable Bookings Amount for the benefit of BrowserCam.  Defendant agreed,

27   to use commercially reasonable efforts to achieve the
      maximum Applicable Bookings Amount on Seller's
28   [BrowserCam's] behalf: <u>provided</u> that Seller acknowledges

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

3

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1
2
3

    that Purchaser [Defendant] makes no guarantee whatsoever as to any Applicable Bookings Amount and that, except as specifically provide above, it will have complete discretion to market and sell the BrowserCam Products and Services as it sees fit.

4   Complaint, ¶18.

5        The Applicable Period under the Agreement (July 1, 2007 - June 30, 2008) has now

6   concluded.  During that period, Defendant did not: (a) expend at least $250,000 to market

7   BrowserCam's products and services and provide infrastructure for sales support; (b)

8   provide BrowserCam with a Sales and Marketing plan by July 2007 or at any other time;

9   (c) at reasonable intervals, provide BrowserCam with monthly accounting summaries; or

10  (d) use commercially reasonable efforts to achieve, on BrowserCam's behalf, the

11  maximum Applicable Booking Amount.  (Complaint, ¶¶ 20-22.)  To the contrary, and

12  among other things, Defendant did not keep BrowserCam products and services current,

13  which diminished their value and utility to users, and did not offer sufficient customer

14  support for the BrowserCam products and services, which further eroded their performance

15  and value.  (Complaint ¶22.)  And, despite repeated requests by BrowserCam, Defendant

16  belatedly sent only a single, deficient summary in mid-July 2008, after the Applicable

17  Period had ended and BrowserCam had filed this lawsuit.  (Walters Decl. ¶ 2.)[2/]

18                  **III.  PROCEDURAL HISTORY**

19        BrowserCam filed its Complaint on June 13, 2008 .  The Complaint contains two

20  Claims for Relief, one for Breach of Contract and one for Declaratory Relief.  On July 22,

21  2008, Defendant filed this Motion to Dismiss or Transfer asserting two arguments:  First,

22  Defendant says that the Complaint should be dismissed or the case transferred because the

23  Agreement contains a "forum-selection" clause requiring any suit to be brought in New

24  York; second, Defendant says that the Complaint should be dismissed because

25  BrowserCam's Claims for Relief are not ripe.  Neither argument is correct.

26
27
28

---

[2/]   The citation is to the Declaration of Stephen S. Walters, submitted herewith.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

4

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

## IV.  ARGUMENT

**A.**      **The Northern District of California Is A Proper Forum for This Action.**

Defendant does not deny that it is subject to personal jurisdiction in this District, nor that venue is proper here pursuant to 28 U.S.C. Section 1391(a)(2).  Nonetheless, Defendant asserts that the action should be dismissed because the Agreement contains a "forum-selection" clause requiring all disputes arising under the Agreement to be brought in New York City.  Defendant is wrong.  The provision on which Defendant relies is a simple consent to jurisdiction clause that *permits* the parties to bring actions involving the Agreement in New York, but does not state that New York is the *exclusive* forum for such actions.  The law of this Circuit is clear that, under this type of permissive clause, venue is proper in any forum where otherwise permitted, including the Northern District of California – the location of both BrowserCam's principal place of business and a substantial portion of the events giving rise to this litigation.  (Complaint, ¶¶ 2, 5.)

**1.**      **The Distinction Between Permissive and Mandatory Forum-Selection Clauses.**

When deciding whether to dismiss an action based upon a forum-selection clause, courts within the Ninth Circuit first determine whether the clause is permissive or mandatory.[3/]  "[W]here venue is specified with mandatory language the clause will be enforced."  *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989).  But such a clause is "mandatory" only when it "clearly designates a forum as the exclusive one."  *No. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995).  If the language is merely permissive, as it is in this case, the forum-selection clause will not bar suits from being filed elsewhere.  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  *Hile v. Buth-Na-Bodhaige, Inc.*, Case No. C-07-00791 JSW, 2007 WL 4410774, *2 (N.D. Cal. Dec. 14, 2007) (If "the language

---

[3/]   Although the Agreement contains a governing law provision selecting "the internal substantive laws of the Commonwealth of Massachusetts," federal procedural law governs the enforceability of forum-selection clauses because they primarily involve matters of venue.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996);  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir. 1988).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

5

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1    says nothing about [the named forum] having exclusive jurisdiction" the clause is

2    permissive and does not preclude suit elsewhere).

3         In *Hunt Wesson Foods, Inc.*, the parties agreed that "[t]he courts of California,

4    County of Orange, shall have jurisdiction over the parties in any action at law relating to

5    the subject matter of or the interpretation of the contract." *Hunt Wesson Foods, Inc.*, 817,

6    F.2d at 76. The Court of Appeals noted that, "[a]lthough the word 'shall' is a mandatory

7    term," when read in conjunction with the remainder of the clause, "it mandates nothing

8    more than that the Orange County courts have jurisdiction." *Id*. at 77. The *Hunt Wesson*

9    court contrasted this permissive language with the mandatory provision in *Pelleport*

10   *Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir. 1984), where the

11   clause read: "Any and all disputes arising out of or in connection with this Agreement shall

12   be litigated only in the Superior Court for Los Angeles, California (and in no other), and

13   Exhibitory hereby consents to the jurisdiction of said court." *Hunt Wesson Foods, Inc.*,

14   817 F.2d at 77, quoting *Pelleport Investors, Inc.*, 741 F.2d at 275.

15        Similarly, in *Council of Laborers*, the Ninth Circuit concluded that a clause that

16   said "[a] decision of the Board of Adjustment … or the decision of a permanent arbitrator

17   shall be enforceable by a petition to confirm an arbitration award filed in the Superior

18   Court of the City and County of San Francisco, State of California" was permissive, not

19   mandatory. *Northern Cal. Dist. Council of Laborers*, 69 F.3d at 1036. The Court

20   reasoned that "[t]he language 'shall be enforceable' is no less permissive than the 'shall

21   have jurisdiction' language in *Hunt Wesson*." *Id*. at 1037. The clause was not mandatory

22   because "the forum selection clause, while using mandatory language did not contain

23   language that demonstrated the requisite exclusivity of the chosen forum…." *Id*.

24        In contrast to the permissive clauses at issue in *Hunt Wesson*, *Council of Laborers*,

25   and the present case, the forum-selection clause in *Docksider* provided that "Licensee

26   hereby agrees and consents to the jurisdiction of the courts of the State of Virginia. Venue

27   of any action brought hereunder shall be deemed to be in Gloucester County, Virginia."

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

6

Case No. C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

*Docksider*, 875 F.2d at 763.  The *Docksider* court held that this language was mandatory because the statement that venue "shall be deemed to be in" a specific court reflected that the parties "intend to make jurisdiction exclusive."  *Id.* at 764; *see also Hile v. Buth-Na-Bodhaige, Inc.*, Case No. C-07-00791 JSW, 2007 WL 4410774, *2 (N.D. Cal. Dec. 14, 2007) ("[t]he Customer hereby irrevocably submits itself solely to the law and courts of the jurisdiction of the [sic] England and Wales").

Thus, the law in this Circuit is that a forum-selection clause lacking the requisite exclusivity is permissive, not mandatory, and does not require that an action be brought in any specific forum or support dismissal for failure to bring an action in a specific forum. That crucial distinction is dispositive of Defendant's motion to dismiss or to transfer.

**2.    Section 7.3 of the Agreement Is Permissive, Not Mandatory.**

The clause on which Defendant relies, Section 7.3 of the Agreement, reads as follows:

> Governing Law; Jurisdiction.   Any claim arising under or relating to this Agreement shall be governed by the internal substantive laws of the Commonwealth of Massachusetts without regard to principles of conflict of laws.  *Each party hereby agrees to jurisdiction and venue in the courts of the City of New York or the federal courts sitting therein, for all disputes and litigation arising under or relating to this Agreement*, and each party waives and agrees not to assert any defenses or claims relating to improper venue, *forum non conveniens*, or similar defenses or claims, relating to this Agreement.

(Emphasis supplied).[4/]

On its face, this provision is a simple choice of law and a consent-to-jurisdiction clause; to the extent that it affects the parties' choice of a forum, it is permissive, not mandatory.  Put another way, the clause *permitted* BrowserCam to bring suit in New York, because it establishes both personal jurisdiction and venue there, but it does not require that BrowserCam bring suit *only* in New York.

---

[4/]  A copy of the agreement is Exhibit 1 to the Declaration of Jonathan Shapiro, filed to support Defendant's motion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

7

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1    Much the same as the clauses in *Hunt Wesson Foods, Inc.* and *Council of Laborers*,

2    Section 7.3 of the Agreement lacks the "exclusivity" language required to make it

3    mandatory.  As observed above, in *Hunt Wesson Foods, Inc.*, the clause stated that "[t]he

4    courts of California, County of Orange, shall have jurisdiction", and in *Council of*

5    *Laborers* the clause stated "the decision … shall be enforceable by a petition … filed in the

6    Superior Court of the City and County of San Francisco."  *Hunt Wesson Foods, Inc.*, 817,

7    F.2d at 76; *see also Northern Cal. Dist. Council of Laborers*, 69 F.3d at 1036.  The

8    deciding factor in both of those cases was the absence of language suggesting that the

9    named venue was the "sole," "exclusive," or "only" forum where any action under the

10   agreement could be brought, or that any disputes "shall be" submitted to a particular court.

11   *Compare Pelleport Investors, Inc.*, 741 F.2d at 275 ("[a]ny and all disputes … shall be

12   litigated only in the Superior Court for Los Angeles, California (and in no other)"); *Hile*,

13   2007 WL 4410774, at *2 (mandatory clause stated "[t]he Customer hereby irrevocably

14   submits itself solely to the law and courts of the jurisdiction of the [sic] England and

15   Wales");  *Vogt-Nem, Inc. v. M/V Tramper*, 236 F. Supp. 2d 1226, 1231 (N.D. Cal. 2002)

16   ("Any dispute will be submitted to the competent court in Rotterdam.").

17       So here, the parties "agree[d] to jurisdiction and venue in the courts of the City of

18   New York or the federal courts sitting therein;" they did not agree, and the Agreement

19   does not imply, that the "sole," "exclusive" or "only" jurisdiction and venue would be New

20   York or that disputes "shall" be filed there.  Indeed, this clause is substantively

21   indistinguishable from the one at issue in *Hunt Wesson*.  Section 7.3 of the Agreement is at

22   most a permissive forum selection clause, and does not support dismissal or transfer.

23       **3.    Defendant's Arguments for Dismissal Based on Section 7.3 Are Without**
            **Merit.**

24       Defendant ignores the fundamental distinction between permissive and mandatory

25   forum-selection clauses.  Defendant compounds this error by quoting selectively from and

26   paraphrasing Section 7.3 of the Agreement in a manner that misstates the clear meaning of

27   the clause and inserts words that are not there.  And Defendant's assertion that

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

8

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1  BrowserCam "waived" any right to sue in am otherwise proper venue is a flat distortion of

2  the contractual language.

3      Citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d at 324 (9th Cir. 1996) , Defendant

4  argues that "Ninth Circuit courts hold that a forum-selection clause is an appropriate

5  ground to dismiss an action." (Defendant's P's &A's, p. 4:7-8.) That is not entirely

6  accurate. As shown above, the Ninth Circuit draws a clear distinction between forum-

7  selection clauses that are permissive and those that are mandatory and has held uniformly

8  that permissive forum-selection clauses, such as the one at issue in this case, *do not*

9  constitute "an appropriate ground to dismiss an action." *See, e.g.*, *Dist. Council of*

10  *Laborers,* 69 F.3d 1034; *Hunt Wesson Foods, Inc.*, 817 F.2d 75.

11      Consistent with its failure to acknowledge the distinction between permissive and

12  mandatory forum-selection clauses, Defendant cites only cases involving mandatory

13  clauses such as *Argueta,* where the parties agreed to jurisdiction in certain Mexican courts

14  and expressly "relinquished jurisdiction" in any other venue.[5/]  *See Argueta,* 87 F.3d at

15  321-322 n. 3-4. But even those cases at least mentioned the distinction between mandatory

16  and permissive forum-selection clauses. *See Argueta,* 87 F.3d at 320, 325 n. 8; *see also*

17  *Vogt-Nem, Inc.*, 263 F.Supp.2d at 1230-31. Defendant never did.

18      Defendant then attempts to twist the clause at issue into something it is not – a

19  mandatory forum-selection clause. Defendant asserts cavalierly that "the Agreement states

20  that 'all disputes' should go to New York – and there is nothing ambiguous about the word

21

22  [5/]  *See also Laurel Village Baker LLC v. Global Payment Direct, Inc.*, Case No. C-06-
01332 MJJ, 2006 U.S. Dist. Lexis 73663, *3-*4 (N.D. Cal. Sept. 25, 2006) (mandatory

23  forum-selection clause stated the parties agreed that all actions under the agreement
shall be brought in Georgia and "expressly agree to the *exclusive jurisdiction* of such

24  courts") (emphasis supplied); *Vogt-Nem*, 263 F. Supp. 2d at 1230 (mandatory clause
said all claims "will be" brought in a "competent court in Rotterdam"); *Indemnity Ins.*

25  *Co. of N. America v. Schneider Freight USA, Inc.*, Case No. CV-00-08032 DDP (AIJx),
2001 U.S. Dist. Lexis 18918, *4-*5 (C.D. Cal. June 18, 2001) (mandatory forum-

26  selection clause stated "any claim or dispute arising hereunder or in connection
herewith shall be determined by the courts in Seoul *and no other courts*")(emphasis

27  supplied); *Manetti-Farrow, Inc. v. Gucci America, Inc*., 858 F.2d at 511 (9th Cir. 1988)
(mandatory forum-selection clause stated "[f]or any controversy regarding … the

28  present contract, the Court of Florence has *sole* jurisdiction")(emphasis supplied).

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1   'all.'" (Defendant's P's & A's, p.4:22-23.)  But the word "should" (or similar words such

2   as "shall," "will," or "must") does not appear anywhere in Section 7.3.  Rather, the clause

3   says only that personal jurisdiction and venue are proper in New York if an action is

4   brought there, that is, "all disputes" *may* be brought in New York.  And, once again, the

5   rule in the Ninth Circuit is clear:  A forum selection clause is mandatory only when the

6   language "clearly designates a forum as the exclusive one."  *Northern Cal. Dist. Council of*

7   *Laborers*, 69 F.3d at 1037.  No such language is present here.[6/]

8       Defendant's final gambit is to argue that BrowserCam agreed to "'waive[]' and

9   would never even argue that a non-New York court should resolve disputes under the

10  Agreement."  (Defendant's P's & A's, p.4:24-5:2.)  That is not what the Agreement says at

11  all.  The pertinent clause states: ". . . each party waives and agrees not to assert any

12  defenses or claims relating to improper venue, forum *non conveniens*, or similar defenses

13  or claims, relating to this Agreement."  (Agreement, § 7.3.)  Read in context, as it must

14  be,[7/] this provision applies only where a party brings suit in New York and the other party

15  challenges that venue; otherwise, the references to "claims and defenses" such as

16  "improper venue" would make no sense.  Under this provision, the parties waived their

17  right to challenge venue once an action was brought in New York, but did not waive their

18  right to bring suit in another venue.

19      The fact that Defendant must resort to these tactics – failing to acknowledge

20  controlling law from this Circuit and playing fast and loose with the language of the

21

22  [6/]  Defendant's assertion that forum-selection clauses are "presumptively valid" and that
      BrowserCam must meet a "heavy burden of proof" before suit could be brought in a

23      judicial district other than New York (Defendant's P's & A's, p. 7:3-5) fails for the
      same reason.  Those standards apply only when a party is seeking relief from a

24      mandatory forum-selection clause, not when the clause is permissive.  In the absence of
      mandatory language, it is the plaintiff's choice of forum that is entitled to "great

25      deference."  *See* page 13, *infra*, and cases cited.

26  [7/]  If the clause were read in isolation, it would prohibit any party from asserting a "claim
      or defense" of "improper venue" no matter where the lawsuit was filed, which would

27      mean that Defendant "waived" its right to bring this motion.  Although the motion fails
      for other reasons, BrowserCam agrees that such an interpretation would be

28      unreasonable – the clause must be read as applying only to suits that a party chooses to
      bring in New York.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

10

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1   parties' contract – confirms the bankruptcy of its position.  Section 7.3 of the Agreement is

2   not a mandatory forum selection clause by any stretch of the imagination, and both

3   jurisdiction and venue are proper in this Court.

4   **B.     This Case Should Not Be Transferred to New York.**

5          Citing 28 U.S.C. Sections 1406(a) and 1404(a), Defendant also asks the Court to

6   transfer this action from the Northern District of California – where the case was filed,

7   where BrowserCam's principal place of business is located, and where events giving rise

8   to the action occurred – to the U.S. District Court for the Southern District of New York –

9   where neither party is incorporated or maintains its principal place of business, and where

10  there is no allegation that any events giving rise to the action occurred.  Transfer is not

11  warranted under either statute.

12         **1.     28 U.S.C. § 1406(a) Does Not Support Transfer.**

13         Section 1406(a) reads:

14              The district court of a district in which is filed a *case laying*
                *venue in the wrong division or district* shall dismiss, or if it be
15              in the interest of justice, transfer such case to any district or
                division in which it could have been brought.  (Emphasis
16              added.)

17  28 U.S.C. §§  1406(a) (emphasis supplied).  Defendant's sole argument for seeking

18  transfer under this provision is that BrowserCam laid venue in the "wrong" district because

19  Section 7.3 mandates that suits be brought exclusively in New York City.  (Defendant's

20  P's & A's p. 6:11-17.)  To support this argument, Defendant again cites only cases

21  involving mandatory, not permissive, forum-selection clauses.[8]  As explained above, the

---

22  [8]   *See, e.g., Laurel Village Baker LLC v. Global Payment Direct, Inc.*, Case No. C-06-
23  01332 MJJ, 2006 U.S. Dist. Lexis 73663, *3-*4 (N.D. Cal. Sept. 25, 2006) (mandatory
    forum-selection clause stated the parties agreed that all actions under the agreement
24  shall be brought in Georgia and "expressly agree to the *exclusive jurisdiction* of such
    courts") (emphasis supplied); *Interline v. Zim Israel Nav. Co.*, No. C-00-0939 SC, 2000
25  U.S. Dist. Lexis 10867, *4 (N.D. Cal. July 27, 2000) (finding mandatory a clause
    stating:  "All and any claims … shall be brought" in the Southern District of New
26  York, and that court "shall have exclusive jurisdiction…"); *Fireman's Fund Ins. Co. v.
    M.V. Dole Ecuador*, Case No. C-94-3691-CAL ARB, 1995 U.S. Dist. Lexis 7996, *2
27  (N.D. Cal. June 2, 1995) (ordering transfer based on the following mandatory clause:
    "Any suit … may be brought only in the United States District Court for the Southern
28  District of Mississippi").

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

745429.05/SF

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1  relevant clause is permissive:  It did not require BrowserCam to file suit in New York;

2  venue was not laid in the wrong district; section 1406(a) does not apply; and this argument

3  for transfer must be rejected.

4         **2.    28 U.S.C. § 1404(a) Does Not Support Transfer.**

5         Section 1404(a) reads:

6             For the convenience of parties and witnesses, in the interest of
              justice, a district court may transfer any civil action to any
7             other district or division where it might have been brought.

8  28 U.S.C. § 1404(a).  Although Defendant seeks transfer pursuant to this provision,

9  Defendant makes no effort to address party and witness convenience, and precious little in

10  attempting to explain why the "interests of justice" support that result.  Instead, Defendant

11  relies upon the same tired argument it raised under Section 1406(a) and in its motion to

12  dismiss, namely, that Section 7.3 is a mandatory forum-selection clause.  (*See* Defendant's

13  P's & A's, p. 6:11-17.)  That argument fails for the reasons detailed above – no further

14  analysis or discussion is required.

15        The reality, moreover, is that this motion would fail even if analyzed in the usual

16  manner.  In order to transfer an action under 28 U.S.C. § 1404(a), the moving party must

17  show both: (a) the proposed transferee court is one where the action "might have been

18  brought, and (b) that the convenience of the parties and witnesses and the interest of justice

19  favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Jonathan*

20  *Browning, Inc. v. Venetian Casino Resort, LLC*, Case No. C-073983 JSW, 2007 WL

21  4532214, *6 (N.D. Cal. Dec. 19, 2007).  The Agreement in this case permits venue in New

22  York (although it does not require it), so the first part of the test is satisfied here.

23  Defendant, however, did not and cannot meet the second part; in fact, Defendant says the

24  Court "need not even consider" the factors relevant "to identify the appropriate forum."

25  (Defendant's P's & A's. p. 6:13-16.)  Accordingly, Defendant has failed to satisfy its

26  burden, and should not be permitted to attempt to do so for the first time in its Reply Brief.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

12

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1    Defendant could not make the required showing even if it had tried.  To determine

2    whether a party seeking transfer satisfies the second part of the test, courts consider: (i) the

3    plaintiff's choice of forum; (ii) convenience of the parties and witnesses; (iii) ease of

4    access to sources of proof; (iv) local interest in the controversy; (v) familiarity of each

5    forum with applicable law; and (vi) relative congestion in each forum.  *Decker Coal Co. v.*

6    *Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986); *Jonathan Browning, Inc. v.*

7    *Venetian Casino Resort, LLC*, Case No. C-073983 JSW, 2007 WL 4532214, *6 (N.D. Cal.

8    Dec. 19, 2007).

9    The plaintiff's choice of forum obviously favors denying the motion to transfer,

10   because BrowserCam brought the lawsuit here.  That choice is entitled to "great

11   deference."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Jonathan Browning, Inc.*

12   *v. Venetian Casino Resort, LLC*, Case No. C-073983 JSW, 2007 WL 4532214, *6 (N.D.

13   Cal. Dec. 19, 2007) ("Typically a court should give a plaintiff's choice of forum great

14   deference unless the defendant can show that other factors of convenience clearly out

15   weight the plaintiff's choice of forum").

16   The convenience of the parties and witnesses also favors denying Defendant's

17   motion to transfer.  BrowserCam is incorporated in California and its principal place of

18   business was and is in San Francisco; events giving rise to this litigation, including

19   contract negotiations, occurred in this District; and, probable witnesses, including third-

20   party witnesses, are located in this judicial district.  (Walters Decl. ¶¶ 3, 4.)  In contrast,

21   other than a permissive consent to jurisdiction clause, there is no connection between this

22   action and the Southern District of New York.  In fact, Defendant has not even suggested

23   that litigating the action in this District will be substantially more inconvenient for it than

24   if it were required to travel to New York.  *See Jonathan Browning, Inc. v. Venetian Casino*

25   *Resort, LLC*, Case No. C-073983 JSW, 2007 WL 4532214, *6 (N.D. Cal. Dec. 19, 2007)

26   (A defendant seeking transfer pursuant to § 1404(a) must make a strong showing of

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

1  inconvenience to upset a plaintiff's choice of forum).  If anything, the overall

2  inconvenience to the parties would be greater if both of them were required to travel.

3       Defendant indirectly touches on the issue of access to evidence when it asserts that

4  "the availability of compulsory process to compel attendance of non-party witnesses . . . is

5  likewise not relevant to the instant motion because today that [sic] the non-party subpoena

6  authority under Fed. R. Civ. P. 45 provides for nationwide service of process, regardless of

7  where the case will be tried."  (Defendant's P's & A's, p. 6:27-28 n.4.)  But that argument

8  is wrong as a matter of law.  A federal subpoena generally must issue from the district

9  where the trial, hearing, deposition, or production/inspection of documents is to occur.  *See*

10  Fed. R. Civ. P. 45(a)(2)(A-C).  The subpoena may be served (1) within the district of the

11  issuing court; (2) outside that district but within 100 miles of the place specified for the

12  hearing, trial, deposition, or production (the "Bulge" Rule); (3) within the state of the

13  issuing court if state statute or rule permits; or (4) where the court authorizes on motion

14  and for good cause, if a federal statute so provides.  *Id*. at 45(b)(2)(A-D).  Only category

15  four would potentially permit nationwide service, and it does so only where a federal

16  statute so permits and upon motion of a party demonstrating good cause.[9/]  Defendant has

17  neither cited any statutes authorizing nationwide service in this diversity action nor offered

18  any explanation of why good cause would support such service in any event.

19       Courts also look to the local interest in having controversies decided at home.

20  *Decker Coal. Co.,* 805 F.2d 843.  BrowserCam is a California corporation with its

21  principal place of business here.  Thus, there is a local interest in the resolution of this

22  matter.  *See Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, Case No. C-073983

23  JSW, 2007 WL 4532214, *6 (N.D. Cal. Dec. 19, 2007, *citing Lockman Foundation v.*

24  *Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991) ("California has a strong

---

[9/]  Statutes permitting nationwide service include the Multiparty, Multiforum Trial Jurisdiction Act and statutes relating to antitrust actions brought by the United States, such as 15 U.S.C. §23.  *See* 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.22[3][c] (3 ed. 2008).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

14

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1  public interest in deciding controversies involving its citizens").   New York has no

2  interest in this case at all.

3       Familiarity with the applicable law also does not support transfer of this action to

4  the Southern District of New York.  The Agreement's choice of law provision designates

5  Massachusetts law.  (Agreement § 7.2.)  Defendant cites nothing indicating that courts in

6  the Southern District of New York are any more familiar with or capable of applying

7  Massachusetts law than are courts in the Northern District of California.  Likewise,

8  Defendant cites nothing suggesting that the issue of forum congestion favors transferring

9  this matter to the Southern District of New York, and there is no reason to believe that the

10 dockets in New York are lighter than those in this Court.

11      In short, not one of the factors relevant to 28 U.S.C. Section 1404(a) favors transfer

12 – all either favor BrowserCam's choice of forum or are irrelevant.  Defendant's request for

13 transfer to the Southern District of New York must be rejected.

14 **C.    This Court Has Subject Matter Jurisdiction Over Both of BrowserCam's
            Claims for Relief .**

15      BrowserCam's Complaint alleges two Claims for Relief, one for Breach of Contract

16 and one for Declaratory Relief.  Without ever addressing or analyzing either claim,

17 Defendant asserts that "this lawsuit must … be dismissed for lack of subject matter

18 jurisdiction under Rule 12(b)(1) because it was not ripe when filed…."  (Defendant's P's

19 & A's, p. 8:12-13.)  Once again, this argument misstates both the controlling law and the

20 relevant facts.

21      Defendant's argument gets off on the wrong legal footing by relying solely on cases

22 applying the ripeness doctrine to actions involving administrative agencies.[10/]  (*See*

23 Defendant's P's & A's, pp. 8:5-9:12, *citing City of Arcadia v. EPA*, 265 F.Supp.2d 1142

24 (N.D. Cal. 2003); *Envts. Prot. Info. Ctr. v. Tuttle*, No. C-00-0713 SC, 2001 U.S. Dist.

25

26 ──────────────
   [10/]  Defendant also cites *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) for
27 the proposition "customarily a federal court first resolves doubts about its jurisdiction
   over the subject matter."  Although *Ruhrgas AG* does not involve an administrative
28 agency, it also does not involve the issue of ripeness.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

15

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1   LEXIS 1154 (N.D. Cal. Jan. 22, 2007); *California v. United States*, No. C-05-00328 JSW,

2   2008 U.S. Dist. LEXIS 21258 (N.D. Cal. Mar. 18, 2008); *Abbott Labs v. Gardner*, 387

3   U.S. 136 (1967).)  Based on those cases, Defendant argues that the Court must apply

4   *Abbott Labs*, which requires consideration of "'both the fitness of the issues for judicial

5   decision and the hardship of the parties of withholding court consideration' to determine

6   ripeness." (Defendant's P's & A's, p. 9 n.8, *citing Abbott Labs.*, 387 U.S. at 149.)  But

7   neither *Abbott Lab*s nor any of the other administrative agency cases cited by Defendant

8   establish the standard for determining ripeness in this action.[11/]

9      This case involves private parties, not administrative agencies.  In *Principal Life*

10  *Ins. Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005), the Ninth Circuit recognized that

11  "[t]here is no legal or logical requirement compelling the extension of *Abbott Labs* … to

12  cases involving only private contracts." *Id*. at 670.  Finding that cases involving

13  administrative agencies differ substantially from those involving private contracts, the

14  *Principal Life* Court held that *Abbott Labs* does not govern private contract actions.

15  Instead, "the appropriate standard for determining ripeness for private party contract

16  disputes is the traditional ripeness standard, namely, whether 'there is a substantial

17  controversy, between parties having adverse legal interest, of sufficient immediacy and

18  reality….'" *Id*. at 671.  Defendant never cites this standard, let alone attempts to explain

19  why BrowserCam's claims are not ripe under it.

20     Defendant next misstates the facts.  Defendant says that "Plaintiff is complaining

21  about a supposed breach of a contract term to make a payment that is not due until August

22  15, 2008," which is after BrowserCam filed this action.  (Defendant's P's & A's, p. 8:6-8.)

23  But BrowserCam's Complaint alleges breaches of Defendant's obligation to support and

24  market BrowserCam's products and to attempt to achieve maximum Applicable Bookings

25

26

27  _____
    [11/]  It is worth noting that, although Defendant argues that the *Abbott Labs* standard

28  governs the ripeness issue, Defendant makes little or no effort to show that
    BrowserCam's Claims for Relief do not meet that standard.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

16

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1  during the Applicable Period of July 1, 2007 – June 30, 2008, which is *before* the payment

2  was to be made.  These allegations of past breaches plainly are ripe.

3      Section 1.5(c) of the Agreement sets the date for making the "Earn-Out Payment"

4  but that it is not its only requirement.  Rather, Defendant was required to do a number of

5  things before (and whether or not) any Earn-Out Payment was to be made:

6  - "expend not less than $250,000 in the aggregate on (i) marketing the BrowserCam Products and Services and (ii) providing infrastructure (including human resources), marketing and sales support for the BrowserCam Products and Services."

7

8

9  - "prepare and deliver to [BrowserCam] within thirty (30) days after Closing [June 19, 2007] a sales and marketing plan (including a pro-forma budget relating to the same) for the Browsercam Products and Services during the Applicable Period [July 1,2007 – June 30, 2008] (the 'Sales and Marketing Plan')."

10

11  - "provide a monthly summary of the [Defendant's] online management and reporting system single screen shot … at reasonable intervals during the Applicable Period [July 1,2007 – June 30, 2008]."

12

13  - "use commercially reasonable efforts to achieve the maximum Applicable Bookings Amount on [plaintiff BrowserCam's] behalf…."

14

15      BrowserCam's First Claim for Relief is based on Defendant's failure to do these

16  four things from and after July 1, 2007, not its failure to make an Earn-Out Payment on

17  August 15, 2008.  (Complaint ¶ 26.)  In fact, those past breaches must be resolved before it

18  can be determined whether Defendant has complied or can comply with its obligation to

19  make the Earn-Out Payment.  Defendant's argument has it backwards.[12]

20

21  [12]  In erroneously focusing on the Earn-Out Payment, Defendant also mentions the contract provision applicable to disputes regarding "calculation" of that payment. Specifically, Section 1.5(d) of the Agreement requires submission to an Accountant of disputes as to the "calculation," and states:

22

23      The Accountant shall act as experts and not as arbiters to calculate, based solely on the written submission of Purchaser, on the one hand, and Seller, on the other, and not based upon any independent investigation, the Applicable Booking Amount.

24

25

26   The issues regarding Defendant's breach of its substantive obligations under the Agreement must be resolved before there could be any dispute regarding "calculation" of an Earn-Out Payment.  And those issues, which require interpretation of the parties' contract and fact-finding, are not suitable for decision by an expert accountant who is specifically prohibited from acting as an "arbiter."  It is Defendant's reference to that provision which is "premature."

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

17

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER

1    Similarly, BrowserCam's Second Claim for Relief focuses not on the payment of

2  the Earn-Out on August 15, 2008, but on the meaning of another substantive obligation

3  that must be satisfied before the Earn-Out Payment is to be made.  Specifically, Section

4  1.5(d) of the Agreement says that the Applicable Booking Amount for the period July 1,

5  2007-July 30, 2008 must include revenues "on account of sales by [Defendant] of products

6  containing, or derived from, [BrowserCam's] IP rights."  BrowserCam contends that this

7  phrase includes all revenues from sales of the ExperienceFirst platform, as well as any

8  other of Defendant's products that use BrowserCam technology in any way.  Defendant

9  does not deny that there is a current dispute on that point, and the declaratory judgment

10  sought by BrowserCam in its Second Claim for Relief is an appropriate way to resolve it.

11  Once again, that is an issue which must be decided without regard to when the Earn-Out

12  Payment is made.

13    The bottom line is that both of BrowserCam's Claims for Relief involve "a

14  substantial controversy, between parties having adverse legal interest, of sufficient

15  immediacy and reality…."  *Principal Life Ins. Co.,* 394 F.3d at 671.  BrowserCam's claims

16  are ripe.

## V.  CONCLUSION

18    For the foregoing reasons, plaintiff BrowserCam respectfully requests that the Court

19  deny, in its entirety, Defendant's motion to dismiss or transfer.

20

21  Dated:  September 4, 2008                    ALLEN MATKINS LECK GAMBLE
                                                                    MALLORY & NATSIS LLP
22

23                                                          By: /s/ Stephen S. Walters
                                                                    _____
24                                                                STEPHEN S. WALTERS
                                                                    Attorneys for Plaintiff
25                                                                BrowserCam, Inc.

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

745429.05/SF

18

Case No.  C-08-02959-WHA
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS OR TRANSFER